UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE

SERGUEI DRELIOUCH,

DEBTOR.

CHAPTER 13
CASE NO. 05-11193-WCH

SERGUEI DRELIOUCH,

PLAINTIFF,

vs.

AETAN MATAEV, and
STELLA MATAEV,

DEFENDANTS.

ADVERSARY PROCEEDING
NO. 05-1375

MEMORANDUM OF DECISION

I. **Introduction**

The matters before the Court are the motions for summary judgment which both parties have filed. The Defendants, Aetan and Stella Mataev (collectively "the Mataevs" or individually "Aetan" and "Stella"), seek summary judgment in the two proceedings which Plaintiff, Serguei Dreliouch ("Dreliouch"), has filed against them. The first action is this adversary complaint which is a removed a state court proceeding based upon various fraud counts ("Complaint"), and the second is Dreliouch's objection to the proof of claim which Aetan filed in his underlying chapter 13 proceeding ("Objection").[1] The Mataevs contend that summary judgment is

---

[1] On September 1, 2005, I entered a pretrial order in which I ordered the Objection and the Complaint to be combined for trial.

1

appropriate for the Complaint because the counts are barred upon the applicable statute of limitations, laches or estoppel. With respect to the Objection, the Mataevs seek summary judgment because Dreliouch cannot establish that he has repaid his debt to them. Dreliouch seeks summary judgment on the Objection on the grounds that underlying contract became impossible to perform and the proper forum for consideration of the Objection is the Czech Republic. For the reasons stated below, I will enter an order denying both motions for summary judgment.

## II. Procedural and Factual Background

Because the procedural and factual background of the transactions between these two parties are lengthy and complicated, the following is a brief description of the pending actions and includes only the facts necessary to resolving the summary judgment motions.

### A. The Chapter 13 case

Dreliouch filed the underlying Chapter 13 bankruptcy case on February 22, 2005.[2] In his his original Chapter 13 plan, Dreliouch listed a certain mortgage lien of Aetan as disputed and proposing to discharge the lien. Aetan and the Internal Revenue Service ("IRS") objected to the treatment of their respective claims. After the IRS' objection was sustained, Dreliouch filed an amended plan. On Aetan's motion, and over Dreliouch's objection, the time for Aetan to object to Dreliouch's amended plan was extended to twenty (20) days after the conclusion of this adversary proceeding.

The filing of the Chapter 13 case had suspended certain proceedings allowing for Aetan

---

[2] The docket indicates that errors designating the case as a Chapter 7 instead of a Chapter 13 case during electronic filing were quickly corrected.

2

to foreclosure on real estate which Dreliouch owned in the Czech Republic ("the Czech proceedings"). The parties filed a stipulation in the Chapter 13 case regarding the suspension the Czech proceedings. *See Stipulation Regarding Suspension of Proceedings Pending in the Czech Republic*, Case No. 05-11193-WCH, Docket No. 115.

B.  The Proof of Claim Objection and the Czech Proceedings

Aetan filed his proof of claim in the main case on April 4, 2005, claiming a total of $298,473.69 due to him, with $150,000 as the secured portion and $148,473.69 as the unsecured portion. The amounts apparently are related to the mortgage lien referenced in the Czech proceedings. Aetan claims Dreliouch granted him a mortgage on or around January 2000 and the lien was recorded against certain real estate owned by Dreliouch in the Czech Republic (collectively "the 2000 lien agreement"). Translated copies of the agreements referencing the lien and real estate records from the Czech Republic are attached to Aetan's proof of claim. The proof of claim contains twenty (20) pages of documentation.

The Czech proceedings had, at least in part, allowed for the foreclosure of Aetan's lien pre-petition. The translation of the decision which the Czech court issued states that the purpose of the case involves actions "to cancel the lien" "and to impose precautions," without further explanation. *Defendants' Amended Memorandum of Law in Support of Aetan and Stella Mataevs' Motion for Summary Judgment (Defendants' Motion for Summary Judgment), Certificate and Translation of Decision of District Court in the City of Opava, Czech Republic dated January 21, 2005*, Ex. E at 2. In its written decision, the Czech court avers to a debt which Dreliouch owed to Aetan in the amount of $150,000 as a result of a loan contract dated October 14, 1998, for which the final payment was due on January 1, 2003. *Id.* at 4. Dreliouch does not

3

dispute the $150,000 secured portion of the proof of claim is evidenced by the contract of mortgage. *See Debtor, Serguei Dreliouch's Motion and Memorandum of Law for Summary Judgment (Plaintiff's Motion for Summary Judgment)*, at 2, 4. Before the Czech court, Dreliouch unsuccessfully argued that the lien held by Aetan pursuant to the mortgage contract should be canceled because he had repaid this debt. *Id.*

Aetan has never amended the proof of claim despite his admission that he made an error in the calculation of the claim. *Defendants' Motion for Summary Judgment, Affidavit of Aetan Mataev dated September 25, 2006*, Ex. A ¶15. The claim includes not only the secured portion previously admitted by Dreliouch, but also charges for "Interest to 2/2005" in the amount of $87,649.32 and "Attorneys fees and other cost [sic] of collection" in the amount of $14,530, without any further breakdown. Dreliouch filed the Objection on July 19, 2005.

C.    The Complaint

In the meanwhile, Dreliouch filed the Complaint in Middlesex Superior Court on May 11, 2005, charging the Mataevs with seven counts of fraud: breach of fiduciary duty and diversion of assets, fraud, civil conspiracy, intentional infliction of emotional distress, violation of constructive trust, violation of resulting trust, and declaratory judgment. The Mataevs removed the Complaint to this Court on June 2, 2006.

The facts underlying the Complaint are related to Dreliouch and Aetan's former business dealings during the 1990s, which are now the subject of some dispute. The parties, however, agree that Dreliouch had allowed the Mataevs to move into his property at 35 Rockland Street, Newton, Massachusetts ("the Property") in 1994, and in or around 1995, the parties agreed that Dreliouch would to sell the Property to Aetan for $300,000. Dreliouch subsequently granted

4

Aetan a 50% interest in the Property by transferring it to himself and Aetan as tenants in common around February 1996.

The subsequent transactions between Dreliouch and Aetan are the subject of considerable dispute. For instance, Dreliouch and Aetan starkly disagree as to the consideration for the original $150,000 transfer: Dreliouch claims that of the $150,000 paid to him by Aetan in 1996, part of the funds were improperly taken from his business account, *Plaintiff's Motion and Memorandum of Law in Opposition to Aetan and Stella Mataev's Motion for Summary Judgment (Plaintiff's Opposition to Defendants' Motion for Summary Judgment)* at 3; Aetan claims that the 50% down payment for the Property was paid for by Dreliouch retaining $150,000 owed to Aetan from their business. *Defendants' Motion for Summary Judgment* at 2. The chief claim of Dreliouch against the Mataevs is that the subsequent transfer of Dreliouch's 50% in the Property to the Mataevs by deed dated October 25, 1999 ("the 1999 deed") was effectuated by the Mataevs' fraud. All seven counts of the Complaint incorporate this allegation.

In support of his argument that the 1999 deed was procured by fraud, Dreliouch alleges that there are at least five questionable aspects of the 1999 deed which call into question its validity. First, Dreliouch claims to have been out of the country, but that an individual identifying himself as Dreliouch, and using a passport with a different passport number from that of Dreliouch's, signed the deed. Second, the 1999 deed was not recorded until August 14, 2001, with Dreliouch claiming not to have discovered its existence until after that time in 2003 when Aetan started the foreclosure of Dreliouch's real estate in the Czech Republic. Third, the consideration for the transfer was a nominal $1.00, with no documentary evidence having been produced as to the reason for this nominal consideration. Fourth, the document contains

5

inconsistencies and mistakes. Fifth, the parties deny having contacted the attorney who claimed to create and notarize the deed, such that the actual creator of the deed is uncertain. *See Plaintiff's Opposition to Defendants' Motion for Summary Judgment* at 4-5.

### III. Discussion

#### A. Summary Judgment Standard

Summary judgment should only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(c)). All reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. *Desmond v. Varasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir. 1994). Once the movant has averred "an absence of evidence to support the nonmoving party's case," the nonmovant, to avoid summary judgment, must establish the existence of at least one question of fact that is both "genuine" and "material." *Id.* at 763 n.1. The substantive law identifies which facts are material, and only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In addition, the dispute about a material fact must be genuine such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The burden is on the nonmovant to come forward with sufficient evidence to generate an issue worthy for trial. *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 31 (1st Cir. 2001) (quoting *Ralar Distribs., Inc. v. Rubbermaid, Inc.*, 4 F.3d 62, 67 (1st Cir. 1993)).

6

B. The Objection

In his motion for summary judgment, Dreliouch has introduced two legal theories apparently not previously argued by Dreliouch during the course of the Czech proceedings.[3] Assuming *arguendo* that Dreliouch is not barred from raising new legal theories on the scope of the debt under the 2000 lien agreement, Dreliouch's arguments nonetheless must be rejected. The first is that performance of the 2000 lien agreement was made impossible by the closure of the bank account referenced to within the agreement. *Plaintiff's Motion for Summary Judgment* at 4-5. But, as the Mataevs noted, in order to demonstrate that the 2000 lien agreement was nullified by impossibility, Dreliouch must demonstrate that the essential purpose of the contract became impossible. *See Aetan and Stella Mataevs' Opposition to Debtor, Serguei Dreliouch's Motion and Memorandum of Law for Summary Judgment (Defendants' Opposition to Plaintiff's Motion for Summary Judgment)* at 5-6; *Wheelabrator Envirotech Operating Ser., Inc. v. Mass. Laborers Dist. Council Local 1144*, 88 F.3d 40, 45 (1st Cir. 1996). The rationale justifying excuse arises only when an unexpected event makes performance so vitally different from that which the parties originally contemplated, that the change in performance can be said effectively to have vitiated the consent of the parties. *Id.* That is not the case here. As the Mataevs have argued, it is clear that the central purpose of the 2000 lien agreement was to secure repayment of the $150,000. *See Defendants' Opposition to Plaintiff's Motion for Summary Judgment* at 6-7.

---

[3] I note that the generally recognized rule of international comity states that an American court will only recognize a final and valid judgment. *Pilkington Bros. P.L.C. v. AFG Industries Inc.*, 581 F.Supp. 1039, 1045 (D. Del. 1984). In this case, however, I have not been given enough information about the nature and scope of the Czech proceedings, and the decision rendered therein, in order to be able to determine which claims or issues may be barred from relitigation, and much less whether the decision was a final and valid judgment.

The Mataevs certainly did not excuse Dreliouch from his obligation to them just because a certain bank account was closed.

Dreliouch's second argument, that the 2000 lien agreement should be litigated or is being litigated in the Czech Republic, must also be rejected because it is simply unbelievable in the context of these proceedings. In motions submitted in his Chapter 13 filing, Dreliouch conspicuously stated on multiple occasions that the Chapter 13 case was filed to stop that foreclosure and that suspension of the Czech proceedings was necessary in order to prevent the foreclosure of his property there. *See, e.g., Motion filed by Debtor Serguei Dreliouch to Compel Secured Party, Aetan A. Mataev, to Produce Evidence That He Has Postponed Foreclosure Pursuant to 11 U.S.C. Section 362*, Case No. 05-11193-WCH, Docket No. 12; *Stipulation By Debtor Serguei Dreliouch and Aetan Mataev Regarding Suspection of Proceeding Pending in the Czech Republic*, Case No. 05-11193-WCH, Docket No. 115. Dreliouch now makes the utterly confounding statement that "[t]he bankruptcy filing had no impact upon the foreclosure of the Czech property." *Plaintiff's Motion for Summary Judgment* at 7-8. In light of the facts of these proceedings, Dreliouch's contention now that this proceeding is not the proper forum to litigate the debt is flatly rejected. Dreliouch certainly is free to withdraw the Objection or dismiss his Chapter 13 case and to go back and litigate in the Czech Republic,[4] but that does not render inappropriate the proceedings before this Court which he has initiated.

The existence of the 2000 lien agreement evidences something as due. The proof of claim is certainly not vague, as it contained 20 pages of documentation, including a copy of the

---

[4]Considering that the Czech court rejected Dreliouch's argument of repayment, and ordered that his property there be auctioned, it is very surprising to the Court that he would argue for a return to the Czech Republic.

8

2000 lien agreement, which is sufficient under Fed. R. Bankr. P. 3001. A proof of claim executed and filed in accordance with Rule 3001 constitutes prima facie evidence as to the validity and amount of the claim. Fed. R. Bankr. P. 3001(f); *In re Campano*, 293 B.R. 281, 285 (D. N.H. 2003). The existence of the 2000 lien agreement begs the question: Why would Dreliouch have given a security agreement in the Czech property if he did not owe anything to Aetan? In addition, at least one court has rejected Dreliouch's contention that he repaid any of this debt. Dreliouch's argument that he does not owe a debt to Aetan, at least this juncture, must be rejected, and Dreliouch's summary judgment motion denied.

Aetan, in turn, contends that the question of repayment is the sole issue, and that Dreliouch is estopped by the fact that the Czech court rejected his repayment defense, thus entitling him to summary judgment on the proof of claim. As previously noted, whether or not Dreliouch is collaterally estopped as to certain issues by the decision rendered in the Czech proceedings is an open question at this point, since at least two of the elements of collateral estoppel, same issues and final judgment have not been demonstrated. But more so, Aetan has not explained why one court's rejection of Dreliouch's claim that he had repaid an amount of just over $150,000 entitles him to a claim of $298,473.69. *See Plaintiff's Objection to Claim of Aetan Mataev* Case No. 05-11193-WCH, Docket No. 82, ¶7. Dreliouch certainly is within his right to question the amount of the claim, which appears to have been inflated many times over the amount of the original debt, within the context of his objection, as he has done here. Dreliouch's questioning of the statutory or contractual basis that entitles Aetan to interest as well as the reasonableness of the attorneys fees in the claim is sufficient to shift the burden for its substantiation back to Aetan. *See Plaintiff's Motion for Summary Judgment* at 9-10; *Campano*,

293 B.R. at 285. Once the burden has been shifted back to the claimant, it is ultimately for the claimant to prove his claim, not for the objector to disprove it. *Id.* Aetan has admitted that he made an error in the calculation of the amount of the claim, yet has not amended his claim, nor offered a breakdown of the calculations underlying this claim. *See Defendants' Motion for Summary Judgment, Affidavit of Aetan Mataev dated September 25, 2006*, Ex. A ¶15; *Defendants' Opposition to Plaintiff's Motion for Summary Judgment* at 10. Accordingly, there are genuine issues of law and fact with respect to the appropriate amount of Aetan's claim, and Aetan's motion for summary judgment on the proof of claim must also be denied.

    C.    <u>The Complaint</u>

The Mataevs seek summary judgment on the Complaint alleging that it is time-barred, the events having occurred more than three years prior to the date that the Complaint was filed. The parties agree that the applicable statute of limitations in Massachusetts for fraud is three (3) years from its occurrence. Mass. Gen. Laws. ch. 260, § 2A. In the alternative, the Mataevs allege that the fraud complaint is barred by laches or estoppel, and that the allegations of fraud have not been pled with sufficient specificity.

Dreliouch counters that the statute of limitations was tolled until he actually discovered the fraud. The discovery rule delays the statute of limitations while the facts of an injury remain "inherently unknowable" to the injured party. *Saenger Organization, Inc. v. Nationwide Ins. Licensing Assoc., Inc.*, 119 F.3d 55, 65 (1st Cir. 1997) (citing *Catrone v. Thoroughbred Racing Ass'ns. of North America., Inc.*, 929 F.2d 881, 885 (1st Cir. 1991)). In *Saenger,* the court found that a party's deliberate indifference to information contained in a copyright application was not sufficient to toll the running of the statute of limitations, because the facts contained within were

inherently knowable to that party. *Id.* In contrast, the facts in this case concerning the fraudulent creation of the 1999 deed were not inherently knowable to Dreliouch. Upon a conversation with Aetan in 2001, after which Dreliouch went to check the title at the registry of deeds, a title report dated July 15, 2001 indicated that Dreliouch remained a 50% owner of the Property. *See Plaintiff's Opposition to Defendants' Motion for Summary Judgment*, Ex. 33. The alleged fraud was simply not inherently knowable as of that point because Aetan had concealed it from Dreliouch by not timely recording the deed. Dreliouch had no further reason to continually be running to the registry of deeds to check for the alleged fraud after that point.

Dreliouch avers that he learned of the fraud in connection with the 1999 deed some time in 2003, when Aetan began demanding payment from him under the 2000 lien agreement. Because genuine issues of material fact exist with respect to when Dreliouch learned of the transfer of the Property, which underlies the Complaint, the Mataevs' motion for summary judgment on the Complaint is denied. I do not find that laches bars the Complaint, where Aetan has not been actually prejudiced by any injury to him. Also, I find that the facts pled by Dreliouch are sufficiently specific allegations under the Complaint which can be considered.

### IV.    Conclusion

For the reasons set forth herein, I will enter separate orders denying each summary judgment motion.

William C. Hillman
United States Bankruptcy Judge

Dated: December 28, 2006

11